KRALOVETZ, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 18—December 7, 1926.*

*Embezzlement: Money paid to officer of corporation for special purpose.*

Defendant, who was vice-president of an investment corporation, accepted payment of certain notes secured by a mortgage which it had assigned to its customers, gave a receipt in the name of the corporation, and gave the money to another officer of the corporation, who deposited the same in the bank to the credit of the corporation, where it was mingled with corporate funds and subsequently disbursed. *Held,* that the defendant in fact was a mere employee of the corporation and was not guilty of embezzlement, although the mortgage was never paid. [Rule in *Weber v. State,* 190 Wis. 257, applied.] VINJE, C. J., and ROSENBERRY and CROWNHART, JJ., dissent.

ERROR to review a judgment of the circuit court for Sheboygan county: A. H. REID, Judge. *Reversed.*

Plaintiff in error was convicted of embezzlement and sentenced to one to three years in the state prison. Execution of sentence was stayed and writ of error issued.

Plaintiff in error (hereafter called defendant) was elected vice-president of the Sheboygan Mortgage & Security Com-

pany in September, 1923.  He was charged with the duty of collecting the interest due the company.  The making of loans was in the charge of the secretary-treasurer of the company who was the general manager, under whose direction the defendant worked.

Persons who were indebted to the company in the sum of $6,000, evidenced by notes secured by real-estate mortgages, came to the office of the company to pay these notes. They inquired for the secretary-treasurer, who was not in the office at the time.  After waiting for some time they paid the $6,000 and accumulated interest to the defendant, who gave the following receipt:

"December 18, 1924, received of Louis A. Weisse estate, $6,068.83 in payment of mortgage and interest to date.
"SHEBOYGAN MORTGAGE & SECURITY CO.,
"J. C. Kralovetz, Vice-President."

Defendant gave the money for which this receipt was given to the secretary-treasurer, who deposited it in the bank to the credit of the company, where it was mingled with the funds of the company and subsequently disbursed for the benefit of the company by checks, most of which were signed by the defendant as vice-president, after they had been drawn and signed by the secretary-treasurer.

The notes for $6,000 and the mortgages securing the same had been assigned to customers of the company. The notes were never paid by the company.  The mortgages were never satisfied by the company.  The company was adjudged bankrupt in April, 1925.

The cause was submitted for the plaintiff in error on the brief of *Raymond J. Cannon* of Milwaukee, and for the defendant in error on that of the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Charles Voigt,* district attorney of Sheboygan county.

STEVENS, J.  The case presents the same issues of law that were considered in *Weber v. State,* 190 Wis. 257, 208

N. W. 923.  Both the *Weber Case* and the case at bar arose out of business transacted by the same security company. While the defendants in each of these cases were officers of the same company in name, each served the company in fact as a mere employee who carried out the instructions of a superior officer in most of the services performed by him.  The stock of the company held by each defendant consisted merely of qualifying shares.  Each received a monthly salary of $150.  Each was acting for the company when he received the money that was converted.  In each case the receipt for the money was given in the name of the security company and the money was placed to the credit of the company and was used by the company.  Neither defendant profited personally by the conversion of the money by the company.  There is nothing in the facts of either case to bring it within the rule of *Milbrath v. State,* 138 Wis. 354, 363, 120 N. W. 252, where the defendant Milbrath owned the controlling interest in the corporation which he used as "a mere instrumentality created by him under sanction of law" for the purpose of carrying out his fraudulent designs.

Rarely are two cases presented to the court which are so nearly parallel with reference to all questions of fact or of law as are these two cases.  This case comes squarely within the rule of the *Weber Case* and is controlled by it.

*By the Court.*—The judgment and sentence is reversed, and the cause remanded with instructions to discharge the defendant.

Vinje, C. J. (*dissenting*).  I dissented in the case of *Weber v. State,* 190 Wis. 257, 208 N. W. 923, which is held to rule this case.  I did not then state the grounds of my dissent.  They were then and are now that the statute, sec. 343.20, in express terms declares it an offense to embezzle money for the benefit of a third party.  So far as applied to the facts in the *Kralovetz Case* I construe the

statute to read: Any officer or employee of a corporation who, by virtue of such office or employment, shall be intrusted with the disbursement of any money, shall embezzle or fraudulently convert to his own use or to the use of any other person except the owner thereof any such money, shall be punished, etc.  The jury found that Weber, and in this case *Kralovetz,* with criminal intent to defraud, checked out or assisted in checking out to the use of the Sheboygan Mortgage & Security Company the funds deposited with it for a special purpose other than that for which it was checked out.

Neither opinion is based upon the ground that there was not sufficient evidence to sustain the verdict, but upon the grounds that each defendant, though an officer, was in fact but an employee; that he had but a slight interest in the company and did not profit by the fraudulent transaction, all of which grounds seem to me to be beyond the inquiry as to guilt.  When one knowingly and with a criminal intent commits or aids in the commission of an offense, it is immaterial what his profits therefrom were, or what was the grade of his employment or his interest in his employer's business.  Nor will the fact that if he had not joined in the commission of the offense he would have been discharged from his office or employment affect his guilt. Business reasons cannot justify crimes.

ROSENBERRY, J. (*dissenting*).  I concurred in the opinion of the court in *Weber v. State,* 190 Wis. 257, 208 N. W. 923, and accept full responsibility for such concurrence. It is there said (p. 266) :

"Aside from what has been heretofore said, even assuming that the act charged and complained of could in law constitute an embezzlement, nevertheless the agreement above set forth and the testimony of Prescott are so involved in entanglements and uncertainties as to create in our minds more than a robust, reasonable doubt of the guilt of the defendant."

It is my view of the law that where a subordinate yields obedience to a superior officer and merely performs in the course of his duty an act which he is directed to perform, he cannot be possessed of that fraudulent intent which is a necessary element of the crime of embezzlement.   Weber, was in that situation.   But if it is to be held, as it seems to me it is held in the present case, that an employee of a corporation who, by virtue of such employment, is intrusted with the disbursement of money, fraudulently converts it to the use of the corporation of which he is an employee, is not guilty of embezzlement, I cannot concur in that view.

If such is the holding in the *Weber Case*, it is my present conviction that it is erroneous and that the proper construction of the statute is that placed upon it by the Chief Justice in his dissenting opinion herewith.

I am authorized to say that Mr. Justice CROWNHART concurs in this dissent.